## In re J. H. CONGDON.

HABEAS CORPUS. BEFORE JUDD, C.J.

DECEMBER, 1886.

Although a Justice of the Supreme Court has the right, on *Habeas Corpus*, to review the acts by which the arrest of a party, on mesne process in a civil action, was obtained from another justice, yet the best course is to apply to the justice who issued the writ, on a motion to discharge the writ.

A seal is not necessary to the validity of a bond.

In a complaint for the arrest of a. debtor, alleged to be about to quit the Kingdom, an averment verified by oath, on information and belief, that defendant is about to quit the Kingdom, is sufficient: and it is not necessary to add "with intent to evade payment of his debts."

### DECISION OF JUDD, C.J.

The petitioner was sued on the 20th instant by one Ackerman, master of the schooner Geo. C. Perkins, who claims $509.63 for freight and primage on 250 hogs shipped on board this vessel at San Francisco, for Honolulu, by Congdon, at his risk, according to the bill of lading; and alleges that the freight was due and payable at Honolulu on the 18th October, 1886, when the hogs (except such as had died on the passage) were delivered to him.

. On the 22d the plaintiff, by F. A. Schaefer, his attorney in fact, presented a petition entitled in the above action to a Justice of this Court, alleging that the said Ackerman, as master of the said G. C. Perkins, had brought a suit against said Congdon to recover certain amounts for freight upon the carriage of live stock which became due and payable at Honolulu on the arrival of the said vessel on the 18th day of October, 1886; that this petitioner has good reason to believe and alleges upon information and belief that said J. H. Congdon is about to quit this Kingdom; whereupon he prays that process may issue for the arrest and detention of said J. H. Congdon until he shall have entered into security with sufficient sureties to abide

the result of said suit and pay such judgment as shall be rendered thereon.

The jurat is as follows:

"Hawaiian Islands, Oahu, ss. Personally appeared F. A. Schaefer and made oath that the matters above alleged are true, to the best of his knowledge and belief. Subscribed and sworn, etc.

                              "F. A. SCHAEFER."

The justice applied to allowed the process of arrest to issue on the filing of a bond in the sum of $500, conditioned to indemnify said Congdon in case said plaintiff fails to maintain his suit, and the arrest was made on the same day. The petitioner on the next day applied to me in due form for a writ of *habeas corpus* which was issued and returned the same day.

I wish to remark *in limine* that though persons committed on mesne process in any civil action on which they were liable to be arrested and imprisoned, unless when excessive and unmeasurable bail is required, are not entitled as of right to demand and prosecute writs of *habeas corpus*, a Justice of the Supreme Court is allowed by a subsequent section of the Act the discretionary power to issue a writ of *habeas corpus ad subjiciendum* where it is not demandable of right, and thereupon to admit to bail or to discharge the petitioner as law and justice may require.

This gives me at my discretion authority to review the acts by which the arrest on mesne process in a civil action was obtained. I still think, as intimated at the argument, that the best course to pursue would be to apply to the justice who authorized the writ, on a motion to dissolve the attachment and discharge the respondent from custody. This would avoid the unseemly clashing of authority which might occur. This was the course followed in the case of *The King vs. Huntley*, 2 Hawn., 457.

One of the grounds for claiming that the petitioner be discharged is that the bond tendered by the plaintiff in asking for the process of arrest is not sealed with the seals of the principal and surety.

I find that the instrument is in substance a bond, and on the authority of *Campbell vs. Manu,* 4 Hawn., 459, I hold that a seal is not necessary. The common law definition of a bond is an obligation to pay money, and it must be sealed, but, as repeatedly laid down in this Court, the common law is not in force in this Kingdom any further than its reasonings and principles have been adopted. There is no statute here defining a bond to be a sealed instrument or making a seal essential to its validity any more than to a conveyance of land. The distinction between sealed and unsealed instruments is not preserved in our code, and I know of no reason why an obligation, which purports to bind the obligors to pay a certain sum of money to the obligee on the contingency named, should be defeated because the artificial and formal act of affixing a wafer or making a scroll after the names of the obligors has been omitted. By all the authorities, moreover, the omission can be supplied.

A more serious objection is that the jurat is insufficient. It is urged upon me that the oath should be positive as to the facts set forth, and not, as in this case, that they are "true to the best of the knowledge and belief" of the affiant.

Rule 27 of the Supreme Court requires that in equity and admiralty all facts should be verified absolutely, and matters of belief and recollection by a separate clause.

Section 1099 of the Civil Code prescribes that "every civil action hereafter to be tried in any of the Courts of Record in this Kingdom shall be commenced by petition, which petition shall be verified by the oath of the plaintiff or some one on his behalf deposing to the best of his knowledge and belief." The 953d Section of the Code, which authorizes the arrest of a debtor, prescribes that the complaint shall be "verified by the oath of the plaintiff or some one in his behalf."

In this connection I must consider another objection made, that the allegation that plaintiff "has good reason to believe and alleges upon information and belief" that said J. H. Congdon is about to quit the Kingdom, is insufficient, as it is

not a positive averment that Congdon is about to quit the Kingdom. I am at a loss to perceive how a matter which is an intention merely, of another person, can be otherwise alleged truthfully. "Being about to quit the Kingdom" means that there is an intention to quit the Kingdom which is about being carried out. This may be locked entirely in the breast of the party so intending, and only his acts and words which indicate this may be known to the plaintiff. This is a purely statutory matter, and, as Chief Justice Allen said in *Huntley's Case*, when the statute is followed, the allowance of the writ is a matter of right.

Our statute does not require, as the Canadian Statute, that it must be alleged that the "plaintiff has reason to believe and verily believes for reasons specifically stated in the affidavit," that the defendant is about to quit the Kingdom. It may be that the statute should require that the reasons which have operated to induce the belief that the defendant is about to quit, should be specially stated in the complaint in order that the Court may be able to determine whether the belief is well founded or not, but the simple answer to be made in this case is that our law does not now require this, and I am of the opinion that an allegation that the plaintiff has good reason to believe and alleges upon information and belief that the defendant is about to quit the Kingdom, verified by oath in the same way, *i.e.*, that the facts stated are true to the best of the affiant's information and belief, complies with the statute and is sufficient.

The remaining point is that there is no proper allegation of a debt due and owing, or that the defendant is about to quit the Kingdom with the intent to evade the payment of his debts, or, what would be nearly equivalent, without having made provision for the payment of the debt.

As regards the point that no debt is alleged to be due, I think that as this is a petition for arrest of the defendant ancillary to the former suit between the parties, the former declaration was presumably referred to by the justice who granted the warrant.

This states most unequivocally that the debt for freight became due on the arrival at Honolulu of the vessel which carried the petitioner's live stock.

The petition for process of arrest sufficiently states it as well.

A critical study of the 953d Section of the Civil Code is necessary in order to decide whether the last point above made is tenable, *i.e.*, whether it is essential to allege that the defendant is about to quit the Kingdom with the intention to evade the payment of the debt. The law reads: "Upon a complaint verified by the oath of the plaintiff * * stating that a defendant" has, etc., that is, this presupposes a suit by a plaintiff against a defendant, and the process of arrest may be asked for contemporaneously with the complaint, or it may be, as in this case, by a separate complaint.

Now, what must be alleged to entitle the plaintiff to ask for a warrant?

I find that the statute requires one of three circumstances to exist: 1. That the defendant has contracted the debt in a fraudulent manner. 2. That he seeks to evade the payment of the debt or liability to plaintiff either by secreting his property, or by transferring or intending to transfer it to a third party, or is about to remove it out of the jurisdiction of the Court; and 3. That the defendant is about to quit the Kingdom. The statute does not say that the defendant must be alleged to seek to evade the payment of his debt to the plaintiff by leaving the Kingdom. The clause "or is about to quit the Kingdom," is not coupled with any such antecedents. It stands alone as one of the causes upon which a warrant of arrest for a debtor may issue. There is much force in the argument made that the leaving of the Kingdom by a defendant may not imperil the collection of the plaintiff's claim. This is particularly true of residents here possessed of landed property, and their presence in Court as defendants is not necessary to the enforcement of claims against them. It may be that the changed circumstances of this country since this law was enacted make it desirable that this process should be applied only to those who

seek by quitting the Kingdom to evade the payment of their debts. But these are considerations to be addressed to the Legislature.

I must administer the law as I find it, and the complaint setting forth that the plaintiff has good reason to believe and so alleges that the defendant is about to quit the Kingdom, the statute is complied with and thus far only can I enquire on *habeas corpus.*

The prayer of the petitioner is refused and he is remanded into custody.

*Ashford & Ashford, Neumann and Dare,* for petitioner.

*F. M. Hatch,* for the Marshal, respondent.

Honolulu, December 24th, 1886.

